IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MOLLY MALONE, an Individual,

                Plaintiff,

v.

LEGACY HEALTH, a Corporation,

                Defendant.

No. 3:22-cv-01343-HZ

OPINION & ORDER

Caroline Janzen
JANZEN LEGAL SERVICES, LLC
4550 SW Hall Blvd
Beaverton, OR 97005

    Attorney for Plaintiff

Brenda K. Baumgart
Matthew A. Tellam
Melissa Healy
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Molly Malone brings this religious discrimination claim against her former employer, Defendant Legacy Health. Plaintiff alleges Defendant violated Title VII and ORS 659A.030 by failing to reasonably accommodate her religious beliefs when she objected to taking the COVID-19 vaccine. Defendant moves for summary judgment on Plaintiff's claims. For the reasons that follow, the Court denies Defendant's motion.

## BACKGROUND

In March 2020, the COVID-19 outbreak was declared a global pandemic. Defendant—a hospital system—and Plaintiff—a respiratory therapist—were in the thick of it. Defendant had to significantly change its operations to protect patients and employees and to manage care for a new and evolving virus. Muller Decl. ¶¶ 6–8, ECF 17. As a respiratory therapist, Plaintiff was "exposed to the harsh realities of the pandemic on a daily basis," as she treated severely ill COVID-19 patients. Compl. ¶ 8, ECF 1; Baumgart Decl. Ex. 1 ("Pl. Dep.") 86:6-21, ECF 16.

One of Defendant's goals during the pandemic was to limit the spread of COVID-19 within its facilities, including between employees and between patients and employees. Muller Decl. ¶ 8. Early in the pandemic, safety measures such as personal protective equipment ("PPE"), testing, temperature checks, social distancing, and other hygiene practices were implemented. *Id.* But hospitalizations and deaths continued to grow. *Id.* ¶ 10. By the end of 2020, Defendant's inpatient treatment of COVID-positive patients was at an all-time high. *Id.* ¶ 10, Exs. 2, 3. Defendant had to use refrigerated semi-truck trailers as overflow morgues for deceased patients. *Id.* ¶ 10, Ex. 3.

Then, in December 2020, the FDA issued its first Emergency Use Authorizations for the COVID-19 vaccine, followed by full FDA approval of two of the vaccines by August 2021 and

January 2022. Baumgart Decl. Ex. 2 (Cohen Rep.) ¶ 22; Muller Decl. Ex. 5 at 1. Soon after the vaccine was approved, Defendant received its first shipment of vaccines and began administering them by prioritizing employees who worked in units with a high risk of exposure. Muller Decl. ¶¶ 13–14, Exs. 5–8. In August 2021—after vaccination rates among employees plateaued and the new, more transmissible delta variant arrived in Oregon—Defendant enacted its Vaccination Policy requiring all Legacy "caregivers" to become fully vaccinated or have an approved exception by September 30, 2021. *Id*. ¶ 25. The policy permitted religious and medical exceptions to the vaccine requirement, which were reviewed by a "Vaccine Exemption Working Group." *Id.* ¶ 29. Around this time, the State of Oregon also issued a temporary rule requiring healthcare workers to be fully vaccinated or have a documented religious or medical exemption in place. OHA, Temp. Admin Order PH 38-2021 (Aug. 25, 2021); *see also* Or. Admin. R. ("OAR") 333-019-1010.

Defendant adopted the vaccination requirement in part because the "scientific consensus" at the time was that "vaccines were safe and highly effective at preventing infection and reducing cases of severe illness and death." Muller Decl. ¶ 28. Defendant also concluded that having unvaccinated individuals work on-site was too great a health and safety risk, particularly given the hundreds of exception requests it received. *Id.* ¶¶ 30, 31 ("[T]he [Senior Leadership Team] was cognizant of the fact that transmissions were still occurring even as Legacy took all appropriate steps to prevent them."). Some patients, for example, were so vulnerable that "commonplace items such as fresh flowers or fruit [could not] be placed in their rooms." *Id.* ¶ 31. As a result of the vaccine requirement, 96% of Defendant's employees were fully vaccinated by October 2021. *Id.* at Ex. 26.

3 – OPINION & ORDER

Plaintiff worked directly with patients as a respiratory therapist in one of Defendant's trauma units. Pl. Dep. 31:16, 35:22; Compl. ¶ 5. Plaintiff's job required both direct patient care and interpersonal interactions with patients and coworkers. *Id.* at 45:22–46:7. She worked bedside and was mainly responsible for managing patients on ventilators, including patients on extracorporeal membrane oxygenation ("ECMO"). Pl. Dep. 37:16–38:5, 48:14–23. Her position involved intubation and extubation, bronchoscopies, nebulizer treatment, secretion management, and trach management. *Id*. During the pandemic, she treated many patients with pneumonias caused by COVID-19 who passed away or were on ECMO for long periods of time. *Id.* at 86:6–21.

On August 19, 2021, Plaintiff submitted a religious exception request to Defendant. Pl. Dep. 167:24–168:2; Pl. Dep. Ex. 3 at 3. Defendant denied Plaintiff's exception request on September 27, 2021. Pl. Dep. 190:20–191-25; Pl. Dep. Ex. 15. Defendant told Plaintiff she could (1) get vaccinated, (2) resign from her position, or (3) take no action and be placed on administrative leave. Pl. Dep. Ex. 15.

Plaintiff ultimately received the first dose of the Pfizer vaccine on October 18, 2021. *Id.* at 205:9–14. Plaintiff had a bad reaction to the vaccine and sought and received a medical exception from receiving the second dose. *Id.* at 222:1–8; Compl. ¶ 12. Plaintiff was then given the option of applying for remote jobs internally, but the positions available were entry-level positions that paid considerably less than her salary as a respiratory therapist. Pl. Dep. 225:10–226:19. She did not apply for any of the jobs because of the pay discrepancy. *Id.* at 226:20–21. Plaintiff was terminated on February 22, 2022. *Id.* at 255:3–7; Pl. Dep. Ex. 26. Plaintiff was ultimately hired as a respiratory therapist in the emergency department at Providence Portland

Medical Center, where she was allowed to work in person without receiving the vaccine as long as she wore an N95 mask. Malone Decl. ¶¶ 5–6, ECF 22.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of " 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." *Fed. Trade Comm'n v. Stefanchik*, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. *Suever v. Connell*, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d 1108, 1112 (9th Cir. 2011). If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support its claim than would otherwise be necessary. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

5 – OPINION & ORDER

## DISCUSSION

Defendant moves for summary judgment on Plaintiff's claims under Title VII and ORS 659A.030 for failure to reasonably accommodate her religious beliefs. Defendant's sole argument is that it could not have reasonably accommodated Plaintiff without undue hardship because she worked exclusively in a hospital setting in close contact with vulnerable patients and other staff. Def. Mot. 21, ECF 15.

To establish religious discrimination on the basis of a failure to accommodate theory, a plaintiff must set forth a prima facie case that (1) they had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) they informed the employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected them to an adverse employment action because of their inability to fulfill the job requirement. *See Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004). Once the prima facie case is established, the burden then shifts to the defendant to show that it "initiated good faith efforts to accommodate reasonably the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id.* at 606 (citations omitted); *see also EEOC v. Townley Eng'g & Mfg. Co.,* 859 F.2d 610, 615 (9th Cir. 1988) (holding the "burden of attempting an accommodation rests with the employer rather than the employee"). Whether an accommodation constitutes an undue hardship is a "fact-specific inquiry" that "is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 143 S.Ct. 2279, 2281 (2023).

As a preliminary matter, the Court will not second guess Defendant's belief in the efficacy of the vaccine. This was a time of crisis. Defendant was justified in determining vaccines were required and that they created a safer environment for its patients. And even if the

Court were to accept the testimony of Dr. French, an emergency room physician with experience setting up COVID-19 prevention protocols for hospitals, his discussion of the success of other protocols at unnamed facilities in California and Hawaii does not reasonably cast doubt on the Defendant's evidence as to its own facilities in Portland. *See* French Decl. ¶¶ 8, 9, 12, ECF 23.[1] In addition, the journal articles and scientific reports relied on by Dr. French regarding vaccine efficacy are either misconstrued by Plaintiff or irrelevant to the Court's analysis. Most were published months after the time Defendant made the relevant decisions in this case, *see* French Decl. Exs. 4, 6–8, leaving two that are temporally relevant to Defendant's vaccine mandate, French Decl. Exs. 2, 3. Of those, one is a case study of a COVID-19 outbreak at a large public event where a large number of fully vaccinated persons were infected. French Decl. Ex. 2. The report explicitly states that the "data . . . are insufficient to draw conclusions about the effectiveness of COVID-19 vaccines against SARS-CoV-2." *Id.* at 3. And the other provides support for Defendant's decision: "Vaccination reduces the risk of delta variant infection and accelerates viral clearance." French Decl. Ex. 3 at 1. The plaintiffs in other cases have already been warned about misconstruing these reports. *See Zimmerman v. PeaceHealth*, No. 3:22-cv-05960, 2023 WL 7413650, at *8 (W.D. Wash. Nov. 9, 2023) (noting the plaintiff's citation to the paper in French Ex. 2 and emphasizing that the paper still maintained that "vaccination [was] the most important strategy to prevent serve illness and death: and recommended "tak[ing] precautions *in addition to* the vaccine, not in lieu of"); *Federoff v. Geisinger Clinic*, 571 F.Supp.3d 376, 389 (M.D. Pa. 2021) (discussing the paper in French Ex. 3 and admonishing the plaintiffs for misconstruing the findings).

---

[1] Plaintiff failed to upload the supporting documents to Dr. French's declaration in this case but has included the complete document in a similar case in front of this Court. *See West v. Legacy Health*, 3:22-cv-1821-HZ, ECF 37.

7 – OPINION & ORDER

Nevertheless, viewing the facts in the light most favorable to Plaintiff, Defendant has not demonstrated that no reasonable jury could find for Plaintiff. Defendant puts forth evidence that case numbers were increasing to historically high levels due to the delta variant at the time of the vaccine mandate, Muller Decl. ¶¶ 22–23 (citing Exs. 17, 18, 19), 32 (citing Ex. 23); that COVID-19 transmission was still occurring despite preventative measures, *id.* ¶¶ 31, 24; that patient admissions were largely comprised of unvaccinated individuals, *id.* ¶ 33 (Exs. 24, 25); and that many patients were at such a heightened risk of infection that even some commonplace items—such as fresh fruit or flowers—presented a significant risk, *id.* ¶ 31. Defendant also concluded that having unvaccinated individuals work in-person was too great a health and safety risk, particularly given the hundreds of exception requests it received. *Id.* ¶ 30. But absent from the record is any evidence that Defendant made an individualized inquiry into whether Plaintiff could be accommodated or what measures—if any—they considered.

> Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely hat it assesses the reasonableness of a particular accommodation or accommodations . . . Faced with an accommodation request like [the plaintiff's], it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute undue hardship. Consideration of other options . . . would also be necessary."

*See Groff*, 143 S.Ct. at 2296–97. Here, the record is murky as to what other safety precautions or positions existed at the time, what accommodations were considered for Plaintiff, and why those would be an undue hardship on Defendant's business. *Cf. Bordeaux v. Lions Gate Ent., Inc.*, Case No. 2:22-cv-04244-PLA, 2023 WL 8108655, at *13–14 (C.D. Cal. Nov. 21, 2023) (finding that accommodating an actress's vaccine exception would place an undue burden on the defendant because of the increased risk she could transmit the virus to other individuals and the expense the defendants would incur implementing other protocols). Plaintiff, for example, specifically identifies additional testing as one safety measure, Compl. ¶ 21, but the record is

ambiguous as to whether this was a protocol that was considered by Defendant, in use at the time of the vaccine mandate, and why it would not be sufficient. A reasonable jury could find that accommodating Plaintiff was not substantial burden in the context of Defendant's business. Accordingly, the Court denies Defendant's motion for summary judgment.

## CONCLUSION

The Court DENIES Defendant's Motion for Summary Judgment [15]. Defendant's Motion to Strike [26] is denied as moot.

IT IS SO ORDERED.

DATED:_____July 5, 2024_____.

MARCO A. HERNÁNDEZ
United States District Judge

9 – OPINION & ORDER